262 F.2d 676
 William MEYERS, Standard Brands Incorporated, Brillo
Manufacturing Co., Inc., Atlantic Gummed Paper Corp.,
Warshaw Manufacturing, Inc. and Abraham & Straus Division of
Federated Department Stores, Inc., Plaintiffs-Appellants,
v.
JAY STREET CONNECTING RAILROAD, and Moses Spatt, Milton E.
Spatt, Joseph S. Wohl, and Herbert S. Struller,
Individually and as officers and
directors thereof, Defendants-Appellees.
 No. 207, Docket 25458.
 United States Court of Appeals Second Circuit.
 Argued Jan. 6, 1959.
Decided Jan. 20, 1959.
 
 Richard S. Buell, New York City (McLanahan, Merritt & Ingraham, New York City, on the brief), for plaintiffs-appellants William Meyers, Atlantic Gummed Paper Corp., and Warshaw Manufacturing, Inc.
 James E. Sapp, Jr., New York City, for plaintiffs-appellants Standard Brands Incorporated.
 Morris Gottlieb, New York City, for plaintiff-appellant Brillo Manufacturing Co., Inc.
 Marvin E. Frankel, New York City (Proskauer, Rose, Goetz & Mendelsohn, New York City, on the brief), for plaintiff-appellant Abraham & Straus Division of Federated Department Stores, Inc.
 J. Bertram Wegman, New York City (Wegman, Epstein & Burke, New York City, on the brief), for defendants-appellees.
 H. R. Osmond, Chicago, Ill. (A. Henry Walter, Director, Bureau of Inquiry and Compliance, Washington, D.C., on the brief), for Interstate Commerce Commission.
 Before CLARK, Chief Judge, and LUMBARD and MOORE, Circuit Judges.
 LUMBARD, Circuit Judge.
 
 
 1
 The primary issue presented on this appeal is whether Judge Abruzzo's modification of an injunction against abandonment of service by the defendant railroad as a result of an application subsequent to our opinion filed on October 7, 1958, 2 Cir., 259 F.2d 532, so as to exclude from the effect of the injunction a proposed abandonment of the railroad's 'spur, side, and team tracks' was based upon a proper construction of the exemption of 'spur, industrial, team, switching, or side tracks, located or to be located wholly within one State,' afforded by 1(22) of the Interstate Commerce Act, 49 U.S.C.A. 1(22) from the requirement imposed by 1(18) that a certificate of public convenience and necessity be obtained from the Interstate Commerce Commission prior to abandonment of 'all of any portion of a line of railroad.' We hold that the construction of 1(22) adopted below is in conflict with the statute and with the views we expressed in affirming the original injunction and we therefore vacate the modification of the prior injunction, and remand for further proceedings on the merits.
 
 
 2
 Subsequent to the issuance of embargo on all freight by the railroad on August 6, 1958, these plaintiffs, who are shippers serviced by the line, commenced an action seeking injunctive relief under 1(20) of the Interstate Commerce Act from an allegedly wrongful abandonment of operations without I.C.C. approval in contravention of 1(18). After a hearing a preliminary injunction against the abandonment was issued which expressly included the spur, side and team tracks within its scope. We affirmed that injunction against a claim that it improperly included tracks which were within the exemption from I.C.C. jurisdiction over proposed abandonments provided by 1(22) because:
 
 
 3
 'The notice of August 6 was a proposal to abandon the entire operation on the Jay Street Connecting Railroad. This total abandonment would have included the abandonment of track within the jurisdiction of the I.C.C. It was therefore proper under paragraph (20) to enjoin the proposed abandonment of the entire line.'
 
 We also noted that
 
 4
 'Were the defendants' threat to abandon limited to a part of the track it would have been necessary for the district court to determine whether that part was exempt from I.C.C. authority under paragraph (22) * * * Of course it is open to the defendants to develop in the district court the facts regarding any abandonment which may be permissible under paragraph (22) and it would then be the duty of the district court to make findings with respect to such proposed abandonment * * *'
 
 
 5
 We then denied a petition for rehearing stating
 
 
 6
 'Until * * * (the district court) has had an opportunity to pass upon * * * other and different proposals * * * there is no occasion for appellate consideration of the matter.'
 
 
 7
 When proceedings were recommenced in the district court the defendants, instead of proceeding to trial on the merits, moved for a modification of the injunction, asserting that they intended now to abandon only the spur, side and team tracks which were subsequently stricken by Judge Abruzzo from the injunction. The record on the hearing on this motion reveals, however: (1) that as of the time of trial of the motion the only service to shippers using the railroad that had ever been rendered was provided over side tracks or team tracks, all of which were proposed to be abandoned; (2) that no proposal for alternative service to shippers was made by the defendants, and no evidence was introduced to show that any alternative service would be either feasible or adequate; (3) that therefore the defendants' intention remained, insofar as it was manifested by proof of the availability and adequacy of its facilities, to abandon all service on the railroad through the device of abandoning all tracks which provide access to the 'main line' which is concededly within the jurisdiction of the I.C.C. Defendants' assertion for the first time on this appeal that they are prepared to provide adequate service over the switching tracks is entirely without documentation in the record. On this record we are forced to conclude that Judge Abruzzo incorrectly held that the new proposal was for something other than the total abandonment of service which we had already held was properly enjoined.
 
 
 8
 The dominant fact which emerges incontestably from this record is that the abandonment of all spur, side and team tracks will of necessity work an abandonment of all means of access to the main line of the railroad which have thus far been shown to be feasible and reasonable. The defendants have from the outset argued in favor of an entirely literal reading of 1(22) so as to exempt from the special provisions of 1(18) all tracks which may in railroad parlance be termed spur, side, team or industrial tracks. Such tracks may, however, be impressed with functions beyond those normally ascribed to them, as here they are the sole terminal facilities held out to the public for access to the main line. So long as these tracks are impressed with such an additional function they are, for purposes of 1(18)-(22), inseparable from the main line and they may not be abandoned without an I.C.C. certificate of public convenience and necessity.
 
 
 9
 On June 17, 1958, these defendants did petition the I.C.C. for permission to abandon operations of the Jay Street Connecting Railroad. On December 23, 1958 a proposed report of the I.C.C.'s hearing examiner favorable to the abandonment was circulated to the parties. It the light of the information contained in the proposed report, which was consistent with the facts developed on both hearings in the district court, it appears that the purpose of the defendants in proposing their embargo and in contesting this injunction was to minimize their actual pecuniary losses prior to the I.C.C.'s grant of permission to abandon which now seems more likely in view of the hearing examiner's report. What we have said should make it obvious that these defendants may not anticipate the I.C.C.'s result by an uncertified premature abandonment.
 
 
 10
 However, the defendants have also consistently maintained that their losses have been considerably increased because they have at their own cost provided the plaintiffs and others with service over individual private facilities. They have at times seemed to assert a right to shift to the plaintiffs the burden of proving entitlement to such service by remitting them to proceedings under 1(9) of the Interstate Commerce Act before the Commission. We hold here only that the cessation of such private service when coupled with the abandonment of all reasonable means of access to the main line-- taking into account such factors as the location of the railroad, and its facilities for the receipt and delivery of cargo customarily carried-- is a violation of 1(18) which must be nejoined under 1(20).
 
 
 11
 We have for the first time on this appeal had the advantage of the intervention amicus curiae of the I.C.C. to argue its view of the scope of the exemption provided by 1(22). The Commission takes no exception to the views expressed in our prior opinion in this case, and argues that the 'new' proposal of the defendants advanced on the motion below was for an impermissible total abandonment. Unfortunately the I.C.C. did not seek to intervene in time to make its views available to the trial court.
 
 
 12
 It is to be hoped that the proceedings before the Commission will continue to go forward with their present dispatch, and that it will not be necessary unduly to prolong an exercise of equitable powers under 1(20) which must necessarily subject the defendants to continuing large pecuniary losses. It would seem clear that any undue delay of the proceedings before the I.C.C. would justify application to the district court for appropriate relief.
 
 
 13
 The decision of the district court is revrsed, the order modifying the preliminary injunction is vacated, and the prior order of August 20, 1958 is reinstated with a direction to proceed without further delay to the trial of this proceeding and the entry of a final order.